```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
                                  x
RONALD D. BOSCHAN, individually   x
and derivatively on behalf of     x
SHILDAN, INC.,                    x
                                  x
                   Plaintiff,     x    No. 19 Civ. 6481 (LAP)
                                  x
     -versus-                     x           ORDER
                                  x
MOSHE STEINMETZ,                  x
                                  x
                   Defendant.     x
                                  x
---------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Plaintiff Ronald D. Boschan ("Boscan") brings this lawsuit on his own behalf and derivatively on behalf of Shildan, Inc. ("Shildan"), alleging that Moshe Steinmetz ("Steinmetz") breached oral agreements he made to Boschan and engaged in a raft of misconduct in operating Shildan, a corporation of which Boschan and Steinmetz are the sole shareholders.  (See Complaint dated July 12, 2019 ("Compl."), dkt. no. 1.)  Steinmetz now moves for partial dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6).  (See Notice of Motion for Partial Dismissal of Plaintiff's Complaint, dated Sept. 13, 2019, dkt. no. 7.)  For the reasons set forth below, Steinmetz's partial motion to dismiss is GRANTED in part and DENIED in part.

1

## I. BACKGROUND[1]

Steinmetz is the President, CEO, Chairman of the Board, and 70% owner of Shildan, a New York corporation he founded in 1998 that sells terra cotta facades to construction companies. (Compl. ¶¶ 6, 11.) In 2004, Steinmetz offered Boschan a job as Shildan's national sales manager with the option to later receive 30% of Shildan's stock, which Boschan accepted. (Id. ¶ 17.) In 2011, Boschan became a 30% shareholder of Shildan; he remained an employee of Shildan until January 2018, when he resigned. (Id. ¶¶ 19, 22-32.)

**Oral Agreements.** Boschan alleges that he and Steinmetz entered oral agreements governing how Shildan would compensate them. The alleged terms of those agreements are as follows:

> 20. At or around the time Boschan was hired by Shildan in 2004, Boschan and Steinmetz orally agreed that both would receive an identical salary and that neither would receive any commission on sales. Their salaries began at $60,000.00 and rose steadily over time, eventually increasing to $150,000.00 in or around 2011.
>
> 21. When Boschan became a shareholder in 2011, he and Steinmetz orally agreed that they would each receive distributions several times a year based on their pro rata ownership of the corporation. Boschan and Steinmetz also reaffirmed their earlier agreement that neither would receive a commission, or any other compensation from Shildan, beyond the agreed upon identical

---

[1] The following facts are taken from the Complaint and are limited to matters Steinmetz addresses in his motion to dismiss.

>   salaries and pro rata distribution of profits.

(Id. ¶¶ 20, 21.)  Boschan alleges that Steinmetz violated those agreements by issuing commissions to himself, including a commission in 2016 for $366,000.  (Id. ¶ 104.)  Among other causes of action, Boschan asserts breach of contract and unjust enrichment claims based on the commissions.  (Id. ¶¶ 95, 104.)

**Allegations Regarding Briggs Road Properties.**  Boschan alleges that Steinmetz siphoned cash from Shildan by leasing real estate --including properties located on Briggs Road in Mount Laurel, New Jersey -- from companies Steinmetz owned to Shildan at excessive rental rates.  (See id. ¶ 36.)  The allegations regarding those properties are as follows:

>   37.  In or about 2011-2012, Steinmetz purchased a building located at 2047 Briggs Road, Mount Laurel, New Jersey (the "2047 Briggs Road Property") through a New Jersey limited liability company known as 2047 Briggs Road, LLC.
>
>   * * * *
>
>   39.  After purchasing the 2047 Briggs Road Property, Steinmetz as President and CEO of Shildan, Inc. (i.e., the tenant) and as the Managing Member of 2047 Briggs Road, LLC (i.e., the landlord) entered into a lease agreement for the 2047 Briggs Road Property (the "2047 Briggs Road Lease").
>
>   40.  Under the 2047 Briggs Road Lease, Steinmetz charged Shildan, Inc. rent far in excess of the fair rental value of that property.  Additionally, upon information and belief, Steinmetz charged Shildan, Inc. the costs, or much of the costs, of tenant improvements, thereby further increasing

3

>Shildan's already excessive costs of occupying the 2047 Briggs Road Property.

>* * * *

>42. In late 2013 or early 2014, Steinmetz purchased a lot adjacent to the 2047 Briggs Road Property known as 2043 Briggs Road, Mount Laurel, New Jersey (the "2043 Briggs Road Property"). The 2043 Briggs Road Property contained a small house converted into an office and a small shed built with or containing asbestos. Steinmetz purchased the 2043 Briggs Road Property through 2047 Briggs Road, LLC.

>43. After purchasing the 2043 Briggs Road Property, Steinmetz as President and CEO of Shildan, Inc. (i.e., the tenant) and as the Managing Member of 2047 Briggs Road, LLC (i.e., the landlord) entered into a lease for the 2047 Briggs Road Property and the 2043 Briggs Road Property (the "2047/2043 Briggs Road Lease"). Thereafter, on August 18, 2017, Steinmetz, acting on behalf of both the landlord and tenant, entered into an amended lease for the 2047 Briggs Road Property and the 2043 Briggs Road Property (the "Amended 2047/2043 Briggs Road Lease").

>44. Under the 2047/2043 Briggs Road Lease and the Amended 2047/2043 Briggs Road Lease, Shildan, Inc. paid rent far in excess of the fair rental value of that property.

(Id. ¶¶ 37, 39-40, 43-44.) Among other causes of action, Boschan alleges that Steinmetz's inflated lease payments and charges to Shildan for improvements to the Briggs Roads Properties give rise to claims for breach of fiduciary duty.

In his partial motion to dismiss, Steinmetz makes three main arguments. He contends that: (1) Boschan's breach of contract claims based on the alleged oral agreements fail under

4

New York's Statute of Frauds and under section 620(b) of the New York Business Corporations Law; (2) Boschan's fiduciary duty claims regarding the Briggs Road Properties are barred by the statute of limitations; and (3) Boschan's unjust enrichment claims must be dismissed to the extent they rely on the alleged oral agreements. (See Steinmetz's Memorandum of Law, dated Sept. 13, 2019 ("Def. Br."), dkt. no. 7-2.)[2]

## II. **LEGAL STANDARD**

On a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Put differently, the factual allegations must "possess enough

---

[2] Steinmetz also moved to dismiss the derivative claims based on Boschan's failure to verify the Complaint as required by Federal Rule of Civil Procedure 23.1, but he acknowledges that the motion is now moot. (Id. at 17-18; Reply Memorandum of Law, dated Oct. 28, 2019 ("Reply"), dkt. no. 12 at 8 n.4.)

5

heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

### III. DISCUSSION

#### a. Breach of Contract Claim

##### i. Statute of Frauds

Steinmetz argues that New York's Statute of Frauds bars Boschan's breach of contract claim. Under the Statute of Frauds, a contract that "[b]y its terms is not to be performed within one year from the making thereof" is unenforceable unless memorialized in writing. N.Y. Gen. Oblig. Law § 5-701(a)(1); see also Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 Civ. 4635, 2006 WL 1519981, at *10 (S.D.N.Y. June 1, 2006) ("[T]he Statute of Frauds forbids the imposition of a performance obligation on a defendant necessarily extending beyond one year, in the absence of a writing(s) which sets forth all of the essential terms of the agreement imposing that performance obligation.") (quoting City of Yonkers v. Otis Elevator Co., 649 F. Supp. 716, 727 (S.D.N.Y. 1986)).

Courts have construed the Statute of Fraud's one-year-performance provision as covering "only those contracts which, by their terms, 'have absolutely no possibility in fact and law of full performance within one year.'" Guilbert v. Gardner, 480 F.3d 140, 151 (2d Cir. 2007) (quoting Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362, 366 (1998)). "If an agreement may be

6

fairly and reasonably interpreted to permit performance within a year, the Statute of Frauds will not bar a breach of contract action no matter how improbable it may be that performance will actually occur within that time frame."  Id.

There are three alleged oral agreements here.  The first two, made in 2004 when Boschan was hired by Shildan, provided that Boschan and Steinmetz would (1) "receive an identical salary" and (2) "that neither would receive any commission on sales."  (Compl. ¶ 20.)  The third, made in 2011 when Boschan became a shareholder, provided that he and Steinmetz "would each receive distributions several times a year based on their pro rata ownership of the corporation."  (Id. ¶ 21.)

The alleged oral agreement to make profit distributions "several times a year" is barred by the Statue of Frauds.  This holding flows from the principle that "[a]greements for annual payments are deemed to require at least one year to complete" and therefore must be in writing.  See Pickering v. Am. Express Travel Related Servs. Co., No. 98 Civ. 8998 (JFK), 1999 WL 1225246, at *3 (S.D.N.Y. Dec. 21, 1999); see also Kubin v. Miller, 801 F. Supp. 1101, 1120 (S.D.N.Y. 1992) (agreement that required "annual" payments "clearly anticipate multiple payments over a period of more than one year"); Morgenweck v. Vision Capital Advisors, LLC, 410 Fed. App'x 400, 402 ("It is impossible that annual profits could be earned and distributed

within one year of the alleged agreement."). Boschan tries to escape the operation of that principle by arguing that the cases in which it applies involved oral agreements that used the word "annual," while his oral agreement instead uses the phrase "several times a year." (See Boschan's Memorandum of Law in Opposition, dated Oct. 14, 2019 ("Opp.") [dkt. no. 10] at 12.) That is a distinction without a difference, as the words "annual" and "a year" have the same meaning. See Annual, Black's Law Dictionary (11th ed. 2019) (defining "annual" as "[o]ccuring once every year" or "involving a period of one year"). Because the parties' alleged profit distribution agreement contemplated payment obligations extending beyond one year, it was required to be in writing to be enforceable. The motion to dismiss the breach of contract claims as to that oral agreement is therefore granted.

The Statute of Frauds, however, does not bar the oral agreements for Boschan and Steinmetz to take identical salaries and forgo commissions on sales. Those agreements could have been performed within one year if the parties accepted the same salary and did not accept commissions. Although Steinmetz contends that these agreements were dependent on the invalid agreement to distribute profits and that they therefore also fail under the Statute of Frauds, he is incorrect. The three alleged oral agreements operate independently of each other, and


within one year of the alleged agreement."). Boschan tries to escape the operation of that principle by arguing that the cases in which it applies involved oral agreements that used the word "annual," while his oral agreement instead uses the phrase "several times a year." (See Boschan's Memorandum of Law in Opposition, dated Oct. 14, 2019 ("Opp.") [dkt. no. 10] at 12.) That is a distinction without a difference, as the words "annual" and "a year" have the same meaning. See Annual, Black's Law Dictionary (11th ed. 2019) (defining "annual" as "[o]ccuring once every year" or "involving a period of one year"). Because the parties' alleged profit distribution agreement contemplated payment obligations extending beyond one year, it was required to be in writing to be enforceable. The motion to dismiss the breach of contract claims as to that oral agreement is therefore granted.

The Statute of Frauds, however, does not bar the oral agreements for Boschan and Steinmetz to take identical salaries and forgo commissions on sales. Those agreements could have been performed within one year if the parties accepted the same salary and did not accept commissions. Although Steinmetz contends that these agreements were dependent on the invalid agreement to distribute profits and that they therefore also fail under the Statute of Frauds, he is incorrect. The three alleged oral agreements operate independently of each other, and

the profit distribution agreement's failure does not compel dismissal of claims involving breaches of the other two agreements.  See Mellancamp v. Riva Music Ltd., 698 F. Supp. 1154, 1162 (S.D.N.Y. 1988) ("Where . . . a parol contract is a severable one, i.e., susceptible of division and apportionment, having two or more parts not necessarily dependent upon each other, those which, if standing alone, are not required to be in writing, may be enforced." (quoting Dickenson v. Dickenson Agency, Inc., 127 A.D.2d 983, 984 (N.Y. App. Div. 1987)).  Accordingly, the Statute of Frauds does not require outright dismissal of the breach of contract claim.

### ii. N.Y. Bus. Corp. Law § 620(b)

Steinmetz next argues that his agreements with Boschan regarding salaries and commissions are void under New York Business Corporations Law § 620(b) because they would limit the authority of Shildan's board of directors to make decisions regarding compensation.  Under § 620(b), shareholder agreements that restrict the board of directors' authority to manage the corporation's business must be included in the articles of incorporation to be valid.  See N.Y. Bus. Corp. Law § 620(b);[3]

---

[3] Section 620(b) provides, in relevant part, as follows:

> A provision in the certificate of incorporation otherwise prohibited by law because it improperly

Continued on next page . . .

see also Gazda v. Kolinski, 91 A.D.2d 860, 861 (N.Y. App. Div. 1982) (finding that shareholder agreement regarding salary increases was unenforceable because it was not included in the articles of association).  Here, the parties do not dispute that the agreements between Steinmetz and Boschan were not incorporated into Shildan's articles of association.

Nevertheless, the parties' failure to comply with § 620(b)'s technical requirements does not require dismissal of the breach of contract claims.  Several New York courts have found that § 620(b) does not invalidate shareholder agreements that are not otherwise unlawful provided they do not affect the rights of third parties and that the proper remedy in such

---

*. . . Continued from previous page*

> restricts the board in its management of the business of the corporation, or improperly transfers to one or more shareholders or to one or more persons . . . , all or any part of such management otherwise within the authority of the board under this chapter, shall nevertheless be valid:
>
> > (1) If all the incorporators or holders of record of all outstanding shares, whether or not having voting power, have authorized such provision in the certificate of incorporation or an amendment thereof; and
> >
> > (2) If, subsequent to the adoption of such a provision, shares are transferred or issued only to persons who had knowledge or notice thereof or consented in writing to such provision.

N.Y. Bus. Corp. Law § 620(b).

10

circumstances is to direct an amendment to the articles of incorporation or to excuse the absence of an amendment under principles of estoppel.  See Zion v. Kurtz, 50 N.Y.2d 92, 102 (N.Y. 1980); Garson v. Garson, 105 A.D.2d 726, 729 (N.Y. App. Div. 1984) ("It would not be equitable to invalidate a clear agreement merely because the agreement was not put in the proper place, especially when the agreement could be considered valid by amending the certificate of incorporation.").  Steinmetz makes no effort to distinguish these authorities, and the Court finds them on point.  The parties' agreements on salary and commissions are not unlawful and do not affect creditors or any third parties.  As a result, the failure to include those agreements in the articles of incorporation does render the agreements unenforceable.

      **b.**    **Fiduciary Duty Claim**

Steinmetz moves to dismiss the breach of fiduciary duty claims involving the rental of and improvements to the Briggs Road properties as barred by the statute of limitations.  Courts may only resolve timeliness arguments at the motion to dismiss stage, however, "where the dates in a complaint show that an action is barred by a statute of limitations."  Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n, 328 F. Supp. 3d 141, 160-61 (S.D.N.Y. 2018) (quoting Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989)).  Here, Boschan alleges that

11

Steinmetz purchased the Briggs Road properties in 2011/12 and 2013/14, and entered an amended lease in 2017, but the Complaint fails to specify the exact dates on which the conduct giving rise to the fiduciary duty claims occurred or when those claims accrued for purposes of the statute of limitations.  (See Compl. ¶¶ 37-47.)  It may very well be that the statute of limitations bars much of the claim regarding the Briggs Road properties, but the Court cannot reach that conclusion from the face of the Complaint, which makes dismissal inappropriate at this point.  Accordingly, the motion to dismiss for untimeliness is denied.

      **c.**   **Unjust Enrichment Claim**

Steinmetz moves to dismiss the unjust enrichment claims based on the oral agreement under the Statute of Frauds.  "It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label . . . 'unjust enrichment' . . . to the underlying contract claim." Morganweck v. Vision Capital Advisors, LLC, 410 Fed. App'x 400, 401 n.1 (2d Cir. 2011).  Because the Court has already held that the alleged oral agreement regarding profit distributions is barred by the Statute of Frauds, the unjust enrichment claims involving that agreement fail as well.  Boschan's unjust enrichment claims regarding the other alleged oral agreements withstand dismissal.

**IV.   CONCLUSION**

To the extent they are not addressed above, the Court has considered the parties' remaining arguments and finds them unavailing.  For the foregoing reasons, Defendants' motion to dismiss is <u>GRANTED</u> with respect to breach of contract and unjust enrichment claims involving the alleged agreement to make annual profit distributions and is otherwise <u>DENIED</u>.  The Clerk of the Court is directed to close the open motion [dkt. no. 7].

**SO ORDERED.**

Dated:   May 13, 2020
         New York, New York

_____
LORETTA A. PRESKA, U.S.D.J.